**Laura Michelle HEYWOOD, Plaintiff,**

v.

**VIRGINIA PENINSULA REGIONAL JAIL AUTHORITY, et al., Defendants.**

### CIVIL ACTION NO. 2:15cv195

United States District Court, E.D. Virginia.

Signed 11/08/2016

Jeremiah A. Denton, III, Rhiannon Marie Jordan, Jeremiah A. Denton III, P.C., Virginia Beach, VA, for Plaintiff.

Jeff Wayne Rosen, Jeffrey A. Hunn, Anne Catherine Lahren, Pender & Coward PC, Virginia Beach, VA, Stephen John Weisbrod, Weisbrod & Phillips PC, Hampton, VA, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

Rebecca Beach Smith, Chief Judge

This matter comes before the court on the Defendant's Motion for Summary Judgment ("Motion"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, the accompanying Memorandum in Support, and the Request for Hearing, filed by Defendant Virginia Peninsula Regional Jail Authority ("VPRJA") on September 27, 2016. ECF Nos. 72, 73, 74. The Plaintiff, Laura Heywood, filed a Memorandum in Opposition on October 11, 2016. ECF

No. 79. VPRJA filed a Reply on October 14, 2016. ECF No. 83.

The matter has been fully briefed and is ripe for review. For the reasons that follow, VPRJA's Motion is **GRANTED** in part AND **DENIED** in part.

### I. Factual and Procedural History

Laura Heywood was incarcerated at the Virginia Peninsula Regional Jail ("VPRJ") between February 21, 2014, and August 1, 2014. Pl.'s Mem. in Opp. to Summ. J., ECF No. 79, at 2. On June 9, 2014, Heywood was accepted into the "Linkages" program at VPRJ, which permits family visitation on certain nights. Def.'s Mem. in Supp. of Summ. J., ECF No. 73, at 2. On June 10, 2014, Heywood became an inmate worker and was thereafter assigned to clean administrative and medical units at VPRJ. Id. This permitted Heywood to participate in the VPRJ Offender Worker Program, which allows inmates to earn good time credit. Id. On June 19, 2014, Officer Alexander Koehler, a VPRJ employee, asked for an inmate worker[1] to clean the VPRJ medical unit. Id. at 3.[2] Koehler later acknowledged that, after Heywood arrived to clean the medical unit, he engaged in unprotected sexual intercourse with Heywood in the laundry room, which is inside the medical unit. Id.

On July 1, 2014, Heywood was removed from Linkages. Def.'s Mem. in Supp. of Summ. J. at 2. On July 3, 2014, Heywood was removed from her position as an inmate worker. Id. On July 3, July 5, and July 13, 2014, Heywood submitted inmate request forms[3] asking for her position to

---

1. The parties disagree as to whether he specifically requested Heywood. An inmate worker is also known as a "trustee."

2. At this time, Officer Wilkins, also a VPRJ employee, was assigned to provide one-on-one supervision of special management inmate J.E. Def.'s Mem. in Supp. of Summ. J. at

3. J.E.'s cell was "around the corner" from the laundry room, which was purportedly located inside the medical unit. Id.

3. Heywood also submitted other various inmate request forms between June 19, 2014, and July 13, 2014. Def.'s Mem. in Supp. of Summ. J. at 5; ECF Nos. 73–14, 73–15.

be reinstated. Inmate Request Forms, ECF No. 73–3. Also on July 13, 2014, inmate Latoya Mcintosh reported to Cpl. Harper that a correctional officer had engaged in sexual intercourse with a female inmate in the medical unit on June 19, 2014. Def.'s Mem. in Supp. of Summ. J. at 4. Cpl. Harper informed Lt. Roane, who then viewed the video footage from June 19, 2014, and Lt. Roane identified Officer Koehler as the officer assigned to the medical unit on that day. Id. A portion of this video footage has been produced by VPRJA.

Following an investigation, Koehler was terminated from his position and pled guilty to Carnal Knowledge of an Inmate under Virginia Code § 18.2–64.2,[4] which was later reduced to Accessory after the Fact of a Felony under § 18.2–19. See Report & Recommendation, ECF No. 49, at 6 n.2.

Heywood's Second Amended Complaint, filed August 11, 2016, raises fourteen (14) claims: (1) a § 1983 claim against VPRJA; (2) a § 1983 claim against Koehler; (3) an Assault claim against Koehler; (4) an Assault claim against VPRJA under the theory of Respondeat Superior; (5) a Battery claim against Koehler; (6) a Battery claim against VPRJA under the theory of Respondeat Superior; (7) a Negligence Per Se claim against Koehler; (8) a Negligence Per Se claim against VPRJA under the theory of Respondeat Superior; (9) a gross negligence claim against Koehler; (10) a claim for Willful and Wanton Disregard for the Plaintiff's Rights against Koehler; (11) a Negligence claim against VPRJA; (12) an Intentional Infliction of Emotional Distress claim against Koehler; (13) a Negligent Infliction of Emotional Distress claim against Koehler; and (14) an Intentional Infliction of Emotional Distress claim against VPRJA under the theory of Respondeat Superior. ECF No. 66. VPRJA

filed its Answer and Affirmative Defenses to the Second Amended Complaint on August 18, 2016. ECF No. 67. Koehler filed an Answer to the Second Amended Complaint on August 25, 2016. ECF No. 68.

## II. Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249, 106 S.Ct. 2505. A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, the nonmovant must present "evidence on which the [trier of fact] could reasonably find" for the nonmoving party. Anderson, 477 U.S. at 252, 106 S.Ct. 2505.

To defeat a motion for summary judgment, the nonmoving party must go beyond the facts alleged in the pleadings, and rely instead on affidavits, depositions, or other evidence to show a genuine issue for trial. See Celotex, 477 U.S. at 324, 106 S.Ct. 2548; see also M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1992) ("A motion for summary judgment may not be defeated by evidence that is 'merely color-

4. Consent is not a defense to Carnal Knowl- edge of an Inmate under § 18.2–64.2.

able' or 'is not sufficiently probative.'" (quoting Anderson, 477 U.S. at 249–50, 106 S.Ct. 2505)). Conclusory statements, without specific evidentiary support, do not suffice, Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998), nor does "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position." Anderson, 477 U.S. at 252, 106 S.Ct. 2505.

### III. Analysis

VPRJA argues that it is entitled to judgment as a matter of law "[a]bsent a dispute of material fact regarding (1) the absence of an unconstitutional policy or custom, (2) the consensual nature of the interaction or (3) the officer's departure from the scope of his employment." Def.'s Mem. in Supp. of Summ. J. at 1. Because at least one of these three issues is material to each of Counts One, Four, Six, Eight, Eleven, and Fourteen, and these are all of the claims raised by the Plaintiff against VPRJA, the court addresses each of the three cited issues in turn.

This is not the first time this court has been called on to determine whether VPRJA is liable to an inmate for the sexual misconduct of a correctional officer. In Heckenlaible v. Virginia Peninsula Regional Jail Authority, this court held that a genuine issue of material fact existed as to whether a correctional officer was acting within the scope of his employment when he allegedly sexually assaulted an inmate and as to whether VPRJA was negligent. 491 F.Supp.2d 544, 551, 555 (E.D. Va. 2007). The Heckenlaible case, while not identical, is remarkably similar to the case at bar. The inmate in that case accused a correctional officer of forcing her to perform oral sex on him. Id. at 546. That officer refused to cooperate in the VPRJA's investigation of the incident, and the officer was convicted of carnal knowledge of an inmate, an offense for which consent is irrelevant. Id. at 546–47. Notably, at the time of that incident, VPRJA

prohibited sexual contact between officers and inmates and forbid male officers from searching the cells of female inmates without an accompanying female officer in the absence of an emergency. Id. at 547. Heckenlaible alleged claims against the officer and VPRJA, under a theory of respondeat superior, assault, battery, and intentional infliction of emotional distress; she also brought negligent hiring and retention claims, a claim for state law negligence, and a § 1983 claim against the officer. Id.

### A. Respondeat Superior Liability: Counts Four, Six, Eight, and Fourteen

 Under Virginia Law, an employer is liable for the tortious action of its employee, if the employee was acting within the scope of his or her employment at the time he or she took the tortious action. Plummer v. Ctr. Psychiatrists, Ltd., 252 Va. 233, 476 S.E.2d 172, 173 (1996). This is known as the doctrine of respondeat superior. Id. If the plaintiff establishes the existence of an employment relationship, there arises a rebuttable presumption that the employer is liable, shifting the burden to the employer to prove that the employee was not acting within the scope of his or her employment at the time of the tortious action. Gina Chin & Associates, Inc. v. First Union Bank, 260 Va. 533, 537 S.E.2d 573, 577 (2000). Additionally, "the motive of the employee in committing the act complained of is not determinative of whether it took place within the scope of the employment relationship." Id. at 578.

 In Heckenlaible, this court held that whether the officer was acting in the scope of his employment for purposes of respondeat superior, when he allegedly assaulted Heckenlaible, was a question for the jury to decide, noting that the officer was supervising Heckenlaible when the assault occurred. 491 F.Supp.2d at 551–52. Whether Koehler was acting within the

scope of his employment for purposes of respondeat superior, when he allegedly assaulted Heywood, is also a question for a jury. VPRJA argues that, unlike in Heckenlaible, Koehler did not see the Plaintiff unclothed and the Plaintiff was never locked in a cell. Def.'s Mem. in Supp. of Summ. J. at 21. First of all, the Plaintiff disputes that Koehler never saw her unclothed; the Plaintiff maintains that Koehler saw her use the restroom just before the incident. Id. at 21 n.4. Secondly, the Plaintiff need not have been unclothed or locked in a cell immediately prior to the incident for Koehler to have been acting within the scope of his employment. Like the officer in Heckenlaible, Koehler was engaged in the service of supervising an inmate, which was within the ordinary course of the Jail Authority's business. See Heckenlaible, 491 F.Supp.2d at 551. Additionally, as in Heckenlaible, Koehler "arguably used the authority of his office to accomplish the wrongful act." Id. at 552.

VPRJA makes much of what it claims the produced video shows: Koehler chatting with Heywood and then setting down his keys and radio and going to meet Heywood in the laundry room.[5] Def.'s Mem. in Supp. of Summ. J. at 21–22.

VPRJA argues that this is evidence that Koehler was setting out on an independent venture. Id. at 22. However, the produced video does not show this series of events.[6] Even if it did, the video would still need to be weighed by a jury. There is a genuine dispute of fact as to whether Koehler was acting within the scope of his employment at the time of the incident. Thus, the court **DENIES** summary judgment as to Counts Four, Six, Eight, and Fourteen.

## B. Unconstitutional Policy or Custom for Purposes of § 1983 Liability: Count One

■■■ A municipality can be held liable for harm caused by an unconstitutional policy or custom. Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). An unconstitutional policy or custom could take the form of an express policy, the final decision of a person with policymaking authority, an omission that shows deliberate indifference to the rights of its citizens, or a practice that is so persistent and widespread that it constitutes a custom or usage with the force of law. Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (citing Carter, 164 F.3d at 217). Plaintiffs "cannot rely upon scattershot accusations of unre-

5. Heywood objects to VPRJA's characterization of the videotape. Pl.'s Mem. in Opp. to Summ. J. at 3–4. In its Reply, VPRJA responds to Heywood's objection by stating that the timeline summary "is supported both by the videotape and by the AI report." Reply at 2 (emphasis in original). What VPRJA meant by this is unclear, but VPRJA's assertion implies that the video viewed by the AI Report authors and the video produced as Exhibit 6 are one and the same. They are not. See infra and accompanying text.

6. VPRJA has acknowledged that it failed to preserve the entire video. Pl.'s Mem. in Opp. to Summ. J. at 3–4. However, in its Memorandum in Support of Summary Judgment and its factual contentions in the Final Pretrial Order, VPRJA refers to "the pertinent portion of the videotape from June 19, 2014." Id. at 4;

Final Pretrial Order, ECF No. 112, at 27 (emphasis added). Although failure to preserve the "entire" video explains why the timeline VPRJA gives of the video starts earlier than the video itself, it does not explain why the timeline directly conflicts with the produced video at marker 18:49. The produced video begins at 18:49:35. Even if the court assumed that the events VPRJA lists in the timeline occurred between 18:49:00 and 18:49:35, the timeline still could not possibly be accurate, because the timeline states that Koehler walked to a desk, and there is no desk in the video. The timeline is false. Either there was a different video that showed a different part of the medical unit—a part in which a desk is located—or that part of the timeline was fabricated to the extent it attributes those events to the produced video.

lated constitutional violations" to show deliberate indifference. Carter, 164 F.3d at 218. A municipal entity is only liable when such a policy or custom "is (1) fairly attributable to the municipality as its own, and is (2) the moving force behind the constitutional violation." Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal quotation marks and citations omitted). For policies or customs that do not directly authorize constitutional violations, a proximate causal connection must be shown. Id. at 1388.

A municipal entity cannot be held liable under § 1983 on a theory of respondeat superior. Carter, 164 F.3d at 218. Courts must be especially cautious of this doctrinal nuance when assessing allegations of municipal omission involving deliberate indifference, as such allegations are those where "[a] plaintiff's theory is most likely to slip into that forbidden realm." Id. Accordingly, where a plaintiff alleges that a municipal entity caused an employee to inflict an injury, "rigorous standards of culpability and causation must be applied." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). The challenged policy or custom must be specific, and there must be "a close fit between the unconstitutional policy and the constitutional violation." Carter, 164 F.3d at 218.

The Plaintiff argues that VPRJA's "failure to take action to curb sexual misconduct" constitutes deliberate indifference that rises to the level of an unconstitutional custom or policy. Pl.'s Mem. in Opp. to Summ. J. at 7. The specific custom or policy identified by the Plaintiff is that of "leaving unprotected females unchaperoned in the medical unit." Id. (emphasis added). In support of this argument, the Plaintiff cites ten prior incidents of sexual misconduct by guards against inmates. Id. at 6–7. VPRJA asserts that only two

guards have been investigated for sexual misconduct for five incidents. Reply at 3. The unrefuted Affidavit of John Kuplinski, Superintendent of the VPRJ, makes clear that there were at least five substantiated incidents, of which he is aware: the January 2004 incident with Officer Steele; the August 2009 incident with Cpl. Letica Stagg; the August 2011 incident with Officer Kelly Willhoite; and the two February 2012 incidents with Officer Kelly Willhoite. Kuplinski Aff., ECF No. 73–1 at 3. Kuplinski testified in his deposition that there have been five substantiated and five unsubstantiated reports of VPRJ staff members sexually abusing inmates since 2004. Kuplinski Dep., ECF No. 79–6 at 3. The January 2004 incident occurred in an inmate's cell after the offending officer observed the inmate showering in the medical unit. Kuplinski Aff. at 3. The August 2011 incident and February 2012 incidents occurred in inmate cells located within the medical unit. Id. Accordingly, prior to Koehler making the allegedly unwanted sexual contact with Heywood, there were four substantiated sexual assaults by two guards, Officers Steele and Willhoite, against four inmates in the medical unit: one in 2004, one in 2011, and two in 2012. The fifth substantiated incident involved a female officer in another unit. Id.

VPRJA cites various measures it took following the sexual assaults of female inmates in the medical unit: policies that prohibited officers from engaging in sexual relations with inmates, security cameras in the medical unit, and training on sexual abuse and assault. Def.'s Mem. in Supp. of Summ. J. at 17. Additionally, VPRJA states that the lack of supervision of male officers in the medical unit has no causal connection to Koehler's decision to make sexual contact with Heywood. Id. at 17–19. VPRJA acknowledges that there is single-sex supervision in the regular housing units, but notes that single-sex supervision is not required, and that medical unit hous-

ing supervision is not single-sex. Kuplinski Aff. at 4. However, the Plaintiff was not housed in the medical unit. See Second Amended Complaint at 3. Rather, Koehler's interaction with the Plaintiff occurred in the medical unit after he had called for her, as a trustee on duty, to "clean up a mess" in the medical rear. Koehler Dep., ECF No. 73–4, at 2. There were cameras in various locations around the medical unit, but Koehler testified that there were no cameras in the laundry room in the medical unit. Koehler Dep., ECF No. 79–2, at 5.

The custom or policy identified by the Plaintiff is that of unchaperoned ·male guards supervising female inmates in the medical unit. Pl.'s Mem. in Opp. of Summ. J. at 10. Only four substantiated incidents in the medical unit, involving two guards over the course of eight years, fit within this custom or policy. These two guards, Officers Steele and Willhoite, were investigated and terminated from employment. Kuplinski Aff.. at 3. The Plaintiff argues that "video training and terminating and prosecuting abusive guards" was an ineffective preventative measure. Pl.'s Mem. in Opp. to Summ. J. at 10. Viewing the evidence in the light most favorable to the Plaintiff, it seems those measures were ineffective, at least with respect to protecting the Plaintiff. However, the Plaintiff has not shown, and cannot show based on the evidence produced, after full discovery and on the eve of trial, that these measures constituted deliberate indifference for purposes of § 1983.

Viewing the evidence in the light most favorable to the Plaintiff, a fact finder at most could reasonably conclude that sexual assault could occur as a result of leaving unchaperoned female inmates with male correctional officers in the medical unit, as some parts of the unit were not visible on

camera. Thus, a reasonable jury could find that VPRJA's conduct was negligent, but "mere negligence on the part of policymakers is not sufficient." McDaniel, 824 F.2d at 1390. Further, VPRJA's actions are not so "permanent and well settled as to constitute a custom or usage with the force of law." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This court has concluded, in the context of whether it is constitutional to leave female inmates alone with male correctional officers, without more, that it is not unconstitutional to do so. See Heckenlaible, 491 F.Supp.2d at 555 n.6. The Plaintiff cannot show that an inmate's mere presence in the medical unit, alone with a male guard, is the proximate cause of ·a sexual assault. Further, particularly because the two relevant officers were terminated following investigations, this is not a case in which the Plaintiff "may be able to establish that it was so tolerated by the policymaking authorities that rape amounted to a policy of the jail." Doe v. Cunningham, No. 3:06–CV–00019, 2006 WL 2819600, at *2 (W.D. Va. Sept. 28, 2006).

Based on the fully developed record and the evidence being submitted for trial, see Final Pretrial Order, ECF No. 112, at 1–20, there simply is no showing here of an unconstitutional policy or practice or of deliberate indifference. Accordingly, VPRJA's Motion for Summary Judgment is **GRANTED** as to Count One only.

### C. Negligence: Count Eleven

Negligence is generally a jury issue; "[o]nly when reasonable minds could not differ does the issue become one of law to be decided by a court." Artrip v. E.E. Berry Equip. Co., 240 Va. 354,397 S.E.2d 821, 823 (1990). VPRJA argues that "the undisputed facts support just one conclusion: Heywood consented[7] to sex with

---

7. VPRJA raises consent as grounds for full summary judgment in this case. See Def.'s

Mem. in Supp. of Summ. J. at.1, 15, 21, 25–

Koehler and she cannot prevail on a negligence claim." Def.'s Mem. in Supp. of Summ. J. at 25. The Plaintiff clearly and repeatedly disputes that the sex was consensual. VPRJA acknowledges this, but argues that the Plaintiff's testimony is contradicted by the produced video. Id. Whether the Plaintiff's testimony is contradicted by the video is a matter for a jury to decide, particularly when VPRJA's own Memorandum in Support of Summary Judgment is also contradicted by the video, as discussed above.[8]

At this juncture, the court reserves ruling on whether VPRJA is entitled to judgment as a matter of law on the Plaintiff's negligence claim,[9] until after the Plaintiff has presented her case at the trial. Accordingly, the court **DENIES** summary judgment as to Count Eleven.

## IV. Conclusion

For the reasons set forth above, the Defendant VPRJA's Motion for Summary Judgment, ECF No. 72, is **GRANTED** as to Count One and **DENIED** as to Counts Four, Six, Eight, Eleven, and Fourteen. The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

---

27. It claims that consent is undisputed, with both Defendants asserting that the Plaintiff consented to sexual contact with Koehler. See id. at 1, 6, 25–27. On the other hand, the Plaintiff asserts that, to the extent consent is relevant, it is a disputed fact. Pl.'s Mem. in Opp. to Summ. J. at 15. Upon the record before the court, this court agrees that consent is a disputed fact, to the extent that it is an issue for the jury. See Pl.'s Brief in Support of Motion in Limine to Exclude Evidence and Argument of Consent, ECF No. 86, at 3 (awaiting resolution by the court).

8. See supra notes 5, 6 and accompanying text.

9. VPRJA argues that the Plaintiff appears to assert a claim for Negligent Supervision. Def.'s Mem. in Supp. of Summ. J. at 24. The Plaintiff's Second Amended Complaint asserts a direct negligence claim against VPRJA in Count Eleven.